Plaintiff sues on a promissory note made and executed by defendant of date November 14, 1938, in the principal sum of $1,198.24, due November 1, 1939, and bearing interest at the rate of 8% per annum from date until paid, payable to the order of plaintiff.
Defendant pleads payment of the note and discharge of the obligation represented thereby.
The facts show that defendant rented a tract of about 340 acres of land located in Red River Parish, Louisiana, owned by plaintiff, for a period of six years, during which period he farmed the property, maintaining an account with plaintiff for farm supplies, equipment, etc.
The note sued upon represented the rent due and unpaid by defendant for the years 1937 and 1938.
In December, 1939, defendant was called upon to surrender possession of the premises, with which demand he willingly complied. At the same time defendant delivered, to an agent of plaintiff, possession of all farm equipment, tools, implements, stock and produce owned by him and located on the leased premises.
Under date of December 4, 1939, plaintiff transmitted to defendant an account of a sale of 50 bales of cotton which had been produced by defendant on the leased premises, showing net proceeds in the sum of $2,477.14. The account bore the following stamped notation: "Net proceeds received and credited to your account. Ardis Co., Inc., per Matthews."
After turning over his movable property and equipment to plaintiff, defendant surrendered possession of the premises and moved therefrom. Subsequently, over a period of time extending through 1940 and 1941, plaintiff repeatedly communicated with defendant, verbally and in writing, in the attempt to secure a settlement of defendant's obligations, all of which attempts were unavailing, and on December 10, 1942, the present suit on the note was instituted.
This matter is complicated by the existence of an open account of plaintiff against defendant, which had run from the date of the last balancing of the account in the latter part of 1936 through the remaining years during which defendant occupied plaintiff's property. As of November 30, 1939, the account showed a balance due to plaintiff by defendant of $5,374.08.
The record also shows that plaintiff held a chattel mortgage note covering the stock and equipment of defendant in the sum of $2,000 as collateral security, which obligation, of course, was novated by the deliveries of defendant's stock and equipment to plaintiff.
The above facts are established, and, indeed, are undisputed.
Defendant's claim of payment, which, of course, presupposes and admits the existence of the debt, is based upon an alleged understanding with the President of plaintiff company to the effect that the surrender of defendant's tools, equipment, stock and produce would be accepted in full settlement and satisfaction of all the indebtedness due and owing by defendant. In our opinion defendant has failed to maintain this defense. The testimony of defendant himself bearing upon such an agreement is squarely contradicted by the testimony of the President of the plaintiff company, and his denial of the existence of such an agreement is corroborated by surrounding facts and circumstances. Defendant admits in his testimony that he was called upon on numerous occasions after his surrender of his property to meet with the President of plaintiff company for the purpose of settling his affairs. In addition to this testimony, the record contains a number of letters written by plaintiff company, pleading with defendant for a meeting which might result in a working out of his obligations. It is not shown that defendant, at any time, ever denied the continued existence of certain obligations to plaintiff, and, certainly, if there ever was such an agreement as asserted by defendant, unquestionably he would have asserted that agreement in some form or fashion during the period of years that elapsed following the surrender of his property.
Defendant insists that the allowance of the net proceeds derived from the sale of cotton should have been credited by so much as was necessary to the payment and discharge of the note, which was the more onerous obligation. Regardless of the original justice of such a contention, since we find that defendant was promptly notified of the imputation of the credit to the open account, to which imputation he made neither protest nor objection, he cannot *Page 323 
now be heard to urge this contention. Civ. Code, Art. 2165.
In the contention that the credit notation upon the account was made by rubber stamp and therefore was not binding, we find no merit. The only purpose of any form or character of receipt memorandum would be to inform and notify the debtor, and this certainly could be accomplished as well by the use of a rubber stamp as by a handwritten notation.
For these reasons, we conclude that there is no merit either in defendant's plea of payment, or in his contention as to the imputation of the proceeds of cotton sales. Consequently, there remains but one question in the case, and that is the effect of defendant's surrender of all his stock, tools, equipment and produce.
The defendant valued this property at $3,678.75, while plaintiff fixed a value of $1,584.50. Plaintiff's valuation is shown on the inventory of the property as "amount allowed".
When the debtor has made no direction as to the imputation of a payment, and when he has not consented to any imputation made by the creditor, it is well established that the payment must be imputed to the debt which the debtor had at the time most interest in discharging. Civ. Code, Art. 2166.
In the case before us, there is no evidence that the debtor gave any direction as to the imputation of the credit arising from his surrender of his property. Nor is there proof of any imputation made by the creditor to which the debtor consented even by acquiescence. Under these circumstances, since the balance on the open account owed by the defendant bore interest at the rate of 5%, while the promissory note here sued on carried an interest rate of 8%, both obligations being due, it is evident that the obligation represented by the note was the more onerous. Accordingly, the imputation must be made to this obligation.
It is true that there is a wide difference between the respective valuations of the property made by plaintiff and defendant, but, as it happens, there is no necessity for fixing a value upon the property in disposing of the issues before us.
The principal represented by the note sued on amounted to $1,082.24, with interest at 8% per annum from date of November 14, 1938, until paid, and provided for attorney's fees of ten per cent on the amount to be collected. Inasmuch as the valuation fixed by plaintiff, on the property surrendered, amounted to a sum more than sufficient to discharge the amount represented by the principal, interest and attorney's fees upon the note, it is our opinion that the plea of payment, insofar as the obligation sued upon is concerned, must be maintained.
There was judgment below in favor of defendant rejecting plaintiff's demands, and, for the reasons assigned in this opinion, such judgment is affirmed at appellant's cost.
 On Application for Rehearing.